NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM SKEAHAN,<br><br>                Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No.: 19-15451<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

Before the Court is Plaintiff William Skeahan's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.     BACKGROUND**

    **A. Procedural History**

Plaintiff applied for a period of disability and DIB on November 24, 2015, alleging disability as of December 27, 2013. Tr.[1] at 14. The application was denied initially on March 5, 2016. Id. On May 24, 2018, a hearing was held before an ALJ. Id. The ALJ issued a decision

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5-2.

on July 27, 2018 finding that, despite having severe impairments, Plaintiff was able to perform jobs that existed in significant numbers in the national economy and was therefore not disabled as defined by the SSA. Id. at 16–24. Plaintiff requested review of the decision and the Appeals Council subsequently denied the request. Id. at 2. On July 16, 2019, Plaintiff instituted this action. ECF No. 1.

### B. Factual Background

At the time of the administrative hearing, Plaintiff was 50 years old with a high school education. Tr. at 23. Plaintiff's past relevant work was as a construction worker and chemical operator. ECF No. 9 at ¶ 1. Plaintiff testified that he stopped working due to constant pain in his lower back, right hip, and right leg. Tr. at 19. The ALJ found Plaintiff is unable to perform past relevant work as actually or generally performed. Id. at 22–23.

Plaintiff suffers from spinal disorders, status post-lumbar laminectomies and total discectomy and fusion, dysfunction of the left knee, status post-arthroscopic repair, and obesity. Id. at 16. Plaintiff also has anxiety and depression. Id. Plaintiff is able to do his own laundry and mow the lawn. Id. at 22. He is also generally able to feed and take care of himself, although he may require assistance in reaching his feet to put on his socks. Id. At the administrative hearing, Plaintiff testified he can only stand for 10 to 15 minutes at a time and that he can lift 10 pounds. Id. at 20.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v.*

2

*Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

Pursuant to the SSA, to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

### C. Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the plaintiff has an impairment that limits his ability to work. *Id*. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id*. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.* The evaluation continues through each step unless it is determined at any point that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, with the burden shifting to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id*. at 263 n.2.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by (1) discounting and ignoring relevant and probative evidence of disability without sufficient reason; (2) rejecting the medical source opinions regarding the nature and severity of the claimant's impairments and relying instead on his lay interpretation of medical evidence; and (3) failing to follow Social Security Ruling 16-3P in evaluating the plaintiff's symptoms. ECF No. 9 at 9–15.  This Court finds that the ALJ properly analyzed the medical evidence, appropriately explained why each opinion was afforded a certain weight, and correctly evaluated Plaintiff's symptoms.  Therefore, the ALJ's judgment is affirmed.

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2019 and had not engaged in substantial gainful activity since his alleged onset date, September 2, 2015. Tr. at 16.  At step two, the ALJ determined that Plaintiff had the following severe impairments:  spinal disorders; status post-lumbar laminectomies and total discectomy and fusion; dysfunction of major joint (left knee); status post-arthroscopic repair; and obesity. Id.  The ALJ also concluded Plaintiff's anxiety and depression were non-severe impairments. Id. at 16–18.  In his step three analysis, the ALJ noted the relevant listings specifically considered are 1.02 (major dysfunction of a joint) and 1.04 (disorders of a spine). Id. at 18.  The ALJ further considered Plaintiff's obesity in connection with Plaintiff's impairments. Id.  Ultimately, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in combination, the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 18–19.

Next, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), noting that Plaintiff is capable of lifting a maximum of 20 pounds but

5

can frequently carry only up to 10 pounds, that Plaintiff can stand or walk for 6 hours of an 8-hour work day, and that Plaintiff can sit for 6 hours in an 8-hour work day. Id. at 19. It was noted that Plaintiff's conditions adversely affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, and get along with others. Id. In contrast, the ALJ found that Plaintiff's conditions do not adversely affect his ability to talk, hear, see, use his hands, remember, complete tasks, understand, and follow instructions. Id. To reach these conclusions, the ALJ evaluated the evidence on the record which included medical opinions from state agency consultants and Plaintiff's treating physicians. Id. at 19–22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Id at 22–23. At step five, the ALJ established that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, RFC, and transferable job skills. Id. The ALJ also noted that transferability of job skills is not material to the determination of disability because the medical-vocational rules framework supports a finding that Plaintiff is "not disabled" whether or not the Plaintiff has transferable job skills. Id. at 23. A vocational expert testified that the Plaintiff would be able to perform occupations such as an inspector/packer, mail sorter, or weld inspector. Id. at 24. Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. Id.

### B. Analysis

Plaintiff, in support of his contention that the ALJ's decision should be vacated and the case remanded for further consideration of the evidence, argues that the ALJ erred by discounting probative evidence of disability without adequate reasoning, rejecting medical opinions concerning the severity of Plaintiff's impairments, and failing to follow Social Security Ruling 16-3P in evaluating the plaintiff's symptoms. ECF No. 9 at 9–15. The Court disagrees.

**1. The ALJ's Treatment of the Medical Evidence and Medical Source Opinions**

Plaintiff argues that the ALJ failed to discuss relevant evidence and records, and instead gave great weight state agency doctors who did not treat Plaintiff personally. ECF No. 9 at 10. Specifically, Plaintiff argues that his treating physicians have reported that he has significant pain, has limited functioning, and is unable to return to work. Id. at 6, 10. Additionally, Plaintiff argues that the ALJ rejected all medical statements regarding his limitations without a suitable basis. Id. at 11.

When reviewing an ALJ's rejection of a treating physician's opinion, courts in the Third Circuit rely on a set of well-defined principals. To begin with, "an ALJ is not free to employ [his] own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). "The ALJ may choose whom to credit, but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence []he rejects." *Id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

Here, the ALJ explained the weight given to each opinion and analyzed the findings against other evidence in the record. Tr. at 21–22. For example, the ALJ gave little weight to the opinion of Dr. Dante A. Implicito, MD. Id. at 22. The ALJ explained that while Dr. Implicito opined that Plaintiff was "permanently disabled from physical work," such opinion not supported by the record

because Dr. Implicito himself noted that Plaintiff was functioning "at a very high level, he was not narcotic dependent, and he is able to lead a nearly normal life." Id.  The ALJ's reasoning is corroborated by the record as a February 2016 examination revealed that Plaintiff was not in acute distress, he could squat fully without back pain, and Plaintiff did not complain of pain in either his knees or ankles when fully flexed. Tr. at 378.

The ALJ did not reject any treating physicians' opinion and gave explanations for affording different weights to each opinion.  The Disability Determination Services ("DDS") consultants opined that that while Plaintiff has a severe spinal disorder, severe dysfunction of a major joint, and non-severe anxiety, he is nonetheless capable of performing light work. Id. at 21.  The ALJ gave great weight to these opinions because the DDS consultants "are familiar with the program, they examined the available medical records, and their opinions are based on, and supported by, the available medical records." Id.  The ALJ went on to explain that the opinion of Dr. Justin Fernando, MD, who stated that Plaintiff's pain in his lower extremities associated with paresthesia had been taken care of via surgery, was given partial weight because his "the report lacks a complete function-by-function analysis regarding [Plaintiff's] ability to perform work related activities." Id at 21–22.  Similarly, the ALJ explained that the opinion of Dr. Abraham Kuperberg, Ph.D., holding that Plaintiff had good reasoning, thinking, memory, ability to communicate, and ability to adapt emotionally, was given partial weight for the same reason that the opinion lacked analysis regarding Plaintiff's ability to work. Id. at 22.  Lastly, the ALJ explained the opinion of Plaintiff's daughter would also be given partial weight because she has no professional training to assess functional capacity and her relationship with the Plaintiff makes it "difficult to provide an objective view of [Plaintiff's] limitations," but the ALJ considered her opinion to the extent it was consistent with the medical evidence of record.  Id.

The ALJ considered all of the evidence and did not reject any opinion outright. He reviewed the evidence against the entirety of the record and gave explanations for why he afforded each medical opinion greater or lesser weight. Accordingly, no remand is necessary concerning the ALJ's treatment of the medical evidence and medical source opinions.

### 2. The ALJ's Evaluation of Plaintiff's Testimony

Plaintiff argues that the ALJ failed to follow Social Security Ruling 16-3P, which describes requirements for assessing credibility of an individual's statement, in evaluating Plaintiff's symptoms. ECF No. 9 at 12–14. Specifically, Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of pain and anxiety and that the ALJ's finding that Plaintiff was not totally credible was not based on substantial evidence. Id. at 13. Plaintiff argues that the record supports his subjective complaints and that shopping for necessities does not disprove disability. Id. at 14.

"[An] ALJ's credibility determinations are entitled to great deference and may not be discarded lightly." *Jones v. Colvin*, No. 13-4831, 2014 WL 2862245, at *9 (E.D. Pa. June 24, 2014) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). An ALJ "may reject, in part or in whole, subjective complaints if she finds them not credible based on other evidence in the record." *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (citing *Baerga v. Richardson*, 500 F.3d 309, 312 (3d Cir. 1975)); *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993)). Here, the ALJ considered Plaintiff's testimony and found that Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 20. Accordingly, the ALJ placed less weight on Plaintiff's

statements regarding his symptoms because they were belied by the record evidence.

The Court finds that substantial evidence supports the ALJ's credibility determination. The ALJ noted in his decision that Dr. Implicito's medical records dated May 12, 2015 showed Plaintiff's "symptoms improved" and while Plaintiff was "not nearly pain free, [he] was functioning at a very high level and had begun exercising in the pool again." Id. (citing Exhibit 2F at 1). The ALJ also cited to a February 11, 2016 examination report by Dr. Justin Fernando, MD that noted Plaintiff could squat fully without back or lower leg pain and did not complain of pain in his knees or ankles when fully flexed. Id. (citing Exhibit 5F). Furthermore, the ALJ noted in his decision that the psychological report of Dr. Abraham dated February 17, 2016 stated that the Plaintiff's "signs and symptoms are indicative of no psychiatric diagnosis." Id. at 21 (citing Exhibit 6F). The ALJ thus had substantial evidence in the record that did not align with Plaintiff's subjective complaints and properly exercised his discretion in affording lesser weight to Plaintiff's statements given the entirety of the evidence before him.

Accordingly, the Court finds that the ALJ's credibility findings are supported by substantial evidence.

## V.     CONCLUSION

For the foregoing reasons, the ALJ's decision is hereby affirmed. An appropriate order accompanies this Opinion.


**DATED:** December 30, 2020

                                              s/ Claire C. Cecchi
                                          **CLAIRE C. CECCHI, U.S.D.J.**